## BOSTON AND WORCESTER RAILROAD CORPORATION *vs.* AMOS W. DANA.

The doctrine of the English law, that for goods feloniously taken no action lies against the felon, before the institution of criminal proceedings against him, is not in force in this commonwealth.

Under a count for money had and received, money fraudulently taken from the plaintiff by the defendant may be recovered, though not designated as such in the plaintiff's specification of claim, if no objection be made on that ground by the defendant, until after all the evidence in the case has been introduced.

On the trial of an action, brought by a principal against his agent, to recover money received by the defendant from sales of the plaintiff's property, an instruction to the jury that if they are satisfied that the defendant sold the plaintiff's property and received the money therefor, he is bound to account for the same, is not open to the objection that, on proof of the sale and of the receipt of the money, it throws the burden of proof upon the defendant to show that the property sold was not the property of the plaintiff.

On the trial of an action, brought by a principal against an agent, who had charge of certain business of the principal for many years, to recover money received by the defendant from clandestine sales of property of the plaintiff, and money of the plaintiff fraudulently taken by the defendant, evidence that the defendant, at the time of entering the plaintiff's service, was insolvent, and that he had since received only a limited salary and some small additional compensation, and that subsequent to the time of his alleged misdoings, and during the period specified in the writ, he was the owner of a large property, far exceeding the aggregate of all his salary and receipts while in the plaintiff's service, is admissible, as having some tendency to prove, if the jury are satisfied by other evidence that money had been taken from the plaintiff by some one in his employ, that the defendant is the guilty party. And the declarations of the defendant, concerning his property and business transactions, made to third persons, in the absence of the plaintiff or his agents, are inadmissible to rebut such evidence.

On the trial of an action, brought by a corporation against one of their agents, to recover money fraudulently taken from them by the defendant, when the successor of the defendant in the same office has been called as a witness, and is sought to be impeached on the ground that he committed the acts with which the defendant is charged, evidence that money had been taken from the office while the defendant was employed there, prior to the time embraced in the plaintiffs' specification of claim, is admissible for the purpose of sustaining the credit of the witness.

When books and documents introduced in evidence at a trial are multifarious and voluminous, and of such a character as to render it difficult for the jury to comprehend material facts, without schedules containing abstracts thereof, it is within the discretion of the presiding judge to admit such schedules, verified by the testimony of the person by whom they were prepared, allowing the adverse party an opportunity to examine them before the case is committed to the jury.

Declarations, relating to the subject matter of a suit, made by a third person, in the presence of a party to the suit, and to which such party had an opportunity to reply, but did not, are admissible in evidence against him. And such evidence cannot be controlled by proof of different declarations subsequently made by the same person (who died before the trial) to others.

An agent of a corporation, who, on the trial of an action brought against him by the cor

poration to recover money of the corporation alleged to have been fraudulently taken by him, has expressly admitted the general carefulness and accuracy of the plaintiffs' cashier, called as a witness by them, cannot take exceptions to the refusal of the presid ing judge to allow him, at a subsequent stage of the trial, to prove an inaccuracy of said cashier in regard to a particular entry, in no way bearing upon the case, except as affecting the cashier's general carefulness and accuracy.

Affidavits of jurors cannot be received to prove misconduct of the jury in the jury room.

ASSUMPSIT for money had and received. The writ was dated October 10th 1849; and contained a specification of the plaintiffs' claim, embracing eight items, the first five of which, amounting to $98.70, consisted of cash received by the defendant for freight, and for tickets and sleepers sold. The other three items are copied in the margin.* Trial before *Bigelow*, J. who made the following report thereof:

" This was an action of assumpsit, in which the plaintiffs sought to recover of the defendant certain moneys alleged to have been received by him while in their employ as depotmaster or agent, and for which he had not accounted.

"As to the five first items no question was made on the part of the defence that, if the defendant had received the amounts therein charged, he was bound in the regular course of business to account for them; and no claim was made or evidence offered on the part of the plaintiffs, that the defendant's receipt of these amounts was beyond the authority intrusted to him in connection with his office, or by the special permission of the plaintiffs' general superintendent.

---

* (6) April, 1849.  For cash received of Harnden & Co. by J. W. Lawrence, for 30 second class Albany tickets,······  $100.50

(7) For cash received of M. L. Ray and his agents, for tickets furnished them from May 1848 to September 1849, viz.
5 first class Albany,······················ $25.00
1239 second class do.························ 4,150.65   4,175.95

(8) For cash received for Albany and Springfield tickets, not accounted for, between September 1847 and September 1849, viz. 1826 first class Albany,··········· $9,130.00
536 second "      "  ············· 1,797.27
2413 first    " Springfield,  ········ 6.635 75
246½ second "      "     ·········· 456 02   18,019.04

"As to the next two items, amounting together to the sum of $4,276.15, the evidence in the case showed the following state of facts: The defendant, occupying the position of depot-master, and during a portion of the time covered by the plaintiffs' claim being second only to the superintendent in the general management of the plaintiffs' railroad, had been authorized by the superintendent to sell the kind of tickets principally referred to in these two items, namely, Albany second class tickets; and proof was submitted on the part of the plaintiffs, tending to show that the defendant had sold large quantities of these tickets, and not paid for them, nor accounted for the proceeds. The publicity of the sale, and the defendant's authority from the superintendent to sell, were not drawn in question on either side. The amount sold was not agreed upon; the defendant averring that he had kept no accounts, because he paid for them to the ticket seller, as he procured them, out of his own funds, and repaid himself by the proceeds of sales to emigrants, in order to avoid the necessity of having tickets charged, and being obliged to keep accounts and make settlements; and the plaintiffs alleging that he had not paid for said tickets, and had made no returns except in a single instance, and to the amount of about $60, which was for tickets he procured from the ticket clerk, and which were charged to him; but evidence was offered on the part of the plaintiffs tending to show that the number of tickets embraced in this item, as also tickets of the same description embraced in the last item, had been sold by him, and the same never paid for by him, nor the proceeds thereof accounted for. On the part of the defendant, it was contended, and evidence was offered tending to show, that the proceeds of these tickets had been accounted for by the payment of money to the ticket-selling clerk, at the time of their procurement, as before stated. But as to this, and as to the probable mode of the procurement of the tickets themselves, conflicting testimony was offered on the one side and the other. The general current of testimony on the part of the plaintiffs, however, established that the defendant stood in the most confidential relations to the affairs of the

corporation, and that in various ways he had access to and pos-
session of this and other kinds of tickets of the plaintiffs; and
that when inquired of at an early day (of the period drawn in
question) by the assistant superintendent, as to his authority to
sell, and his mode of conducting the sale of these second class
Albany tickets, he referred to the superintendent, and that the
superintendent had thereupon expressed his satisfaction with
his proceedings.

"As to the last item in the bill of particulars, the plaintiffs
contended, and offered evidence to prove, that an amount of
money, equivalent to the tickets therein named, had been ab-
stracted from the plaintiffs' ticket-selling office at the depot in
Boston, by the defendant, to which office as depot-master he
had free access; that the charge and custody of the tickets was
especially intrusted to the ticket seller, who kept the keys to the
locks on the money drawers and ticket cases; that, after the
ticket seller had come to suspect that all was not right in regard
to the tickets, he caused the old locks to be changed on said
drawers and cases; and the plaintiffs offered evidence to show
that said cases and drawers, in the absence of the ticket seller,
were clandestinely visited by the defendant from time to time;
and that the defendant, in such clandestine visits, had abstracted
the money, and had supplied the deficiency of money, thus
caused, by substituting tickets which he had procured, without
authority, from the general ticket office of the plaintiffs, to which
also, as depot-master, he had at all times free access. The
general ticket office and the ticket-selling office are both in the
depot in Boston; the former being on the second story, to which
all tickets are sent, and thence distributed to the various ticket-
selling offices on the entire road; and the latter being on the
first floor, and containing tickets received from the upper office,
intended for retail sale to Boston passengers. The evidence
tended to show that the defendant, as depot-master, had the
general charge and superintendence of the depots, and of all
persons employed therein, and had free access to all parts of the
building, including the ticket offices; that in the two ticket offi-
ces, the tickets were in the special charge and custody of the

Boston and Worcester Railroad Corporation *v.* Dana.

two clerks employed therein, respectively, who kept them in cases and drawers, and under lock and key when they were absent; that these two clerks were specially charged with the care of said tickets, and were held responsible for them. The plaintiffs alleged, and offered evidence tending to show, that the defendant, in the absence of the clerks, by duplicate keys opened said cases and drawers, and substituted tickets and abstracted money as above stated.

" This evidence was not objected to on the part of the defendant at the time of its admission. But after the whole testimony in the case had been introduced, and after the defendant had introduced evidence to contradict and control the evidence offered in regard to this item by the plaintiffs, the defendant's counsel moved the court to instruct the jury, that the plaintiffs could not recover; first, because their cause of action, as set forth in their specification, was for the proceeds of tickets sold, and not for money taken or abstracted from the office and replaced by the substitution of tickets; and secondly, because upon the evidence in this case their cause of action, if they had any, was suspended until indictment found, or a complaint or prosecution had been made against the defendant for larceny. But the judge, at this stage of the trial, and for the purpose of taking a verdict on the merits, declined so to rule; and instructed the jury that if the defendant had fraudulently appropriated the plaintiffs' money in the manner sought to be shown by them, he would be liable in the present action, though no criminal prosecution had first been instituted therefor. As to the sale of the tickets specified in the sixth and seventh items, (those sold to Lawrence and Ray,) the judge instructed the jury, that if they were satisfied that the defendant sold the plaintiffs' tickets, as therein alleged, and received the money therefor, he was bound to account for the same, on the common principle of the law of agency, where the agent receives the money of his principal, and neglects to pay it over.

" The plaintiffs proposed to offer evidence of the defendant's possession of large means and property at or about the time of the alleged abstraction of the plaintiffs' money. This was ob

jected to on the part of the defendant; but the court permitted evidence to be given of the defendant's possession of property subsequent to the time of the alleged peculations, within the period covered by the writ; and also ruled that it was competent to show the defendant's poverty or want of means immediately prior to that period. The plaintiffs thereupon offered testimony, which was not objected to on the part of the defendant, except as above stated, showing that he was insolvent at the time of entering the plaintiffs' service; and that he had since received only a limited salary, and some small extra compensation; and that, subsequent to the period laid as the commencement of his misdoings, he had become the ostensible owner of a large property, much exceeding the aggregate of all his salary and receipts. The jury were instructed that this testimony was not competent to prove that any money had been taken or abstracted from the plaintiffs, but that if they were first satisfied by other evidence that money had been taken or abstracted from them, this evidence might be considered, among other things, as having some bearing on the question whether the defendant had taken or abstracted the money in question. This instruction was not excepted to; but the defendant contended that the evidence was inadmissible for any purpose.

" The defendant, in order to meet and explain the evidence last referred to, proposed to prove certain declarations of his own to third persons, prior to the commencement of the present action, and while in the plaintiffs' employment, respecting his pecuniary transactions, and his style of living and mode of acquiring property; said declarations being made in the hearing of his brother-in-law, and not in the presence of any officer or agent of the plaintiffs; but the same were rejected by the court.

" The plaintiffs offered to prove by Joseph H. Moore, that abstractions of money and a substitution of tickets had been practised in the plaintiffs' ticket-selling office, when the defendant was connected therewith in 1844 and 1845, and prior to the time embraced in the plaintiffs' specification; to which the defendant's counsel objected. 'The court ruled that the evidence would be incompetent as tending to show the defendant's abstractions

of money at the period laid in the writ, but was competent solely as affecting the degree of credit to be attached by the jury to the testimony of William B. Fowle, one of the plaintiffs' witnesses, unless the defendant's counsel would disclaim the imputation on said witness of having taken the money dishonestly now claimed of the defendant. Fowle had been the plaintiffs' ticket-selling clerk since 1847; and had testified to facts tending to show that the defendant had abstracted money and substituted tickets in his office since that period. The defendant contended, and urged as one ground of defence, that if money had been taken from the ticket office, and tickets substituted therefor, as contended by the plaintiffs, it was done by Fowle, and not by the defendant, and that this was a reason why Fowle's testimony was not entitled to credit. The defendant's counsel declining to disclaim any inference or imputation as to Fowle, the court admitted the evidence as tending to show that, similar abstractions of money and substitution of tickets having taken place before Fowle was employed by the plaintiffs, his testimony was not subject to the discredit urged by the defendant.

" The plaintiffs, in proof of their losses, put into the case two schedules or summaries made by Fowle, exhibiting the discrepancies between the number of tickets sold by them from December 1st 1845 to December 31st 1849, and again from January 1st 1850 to October 1st 1850, as compared with the tickets taken up and returned to them by the Western Railroad Corporation during the same period; the Western Railroad being a connecting railroad with that of the plaintiffs, and over which a portion of their passengers passed. These schedules, as Fowle testified, were made up from original documents previously proved and in the case; and their admission being objected to, the court admitted them as summaries of matter already in proof, signifying to the defendant's counsel that an opportunity would be afforded them to test their accuracy, before the case should be committed to the jury. Subsequently the same privilege of introducing similar summaries, showing discrepancies in the schedules of the plaintiffs, and that there

8 *

have been no such losses sustained by the plaintiffs as were alleged by them, was conceded to the defendant's counsel, after the defendant's counsel had closed their case, and the plaintiffs' counsel had commenced their final argument to the jury.

" The plaintiffs offered to prove, that at a meeting of the directors of the plaintiffs' corporation before the commencement of the present action, a person named Ellis made certain declarations in the defendant's presence and hearing, in regard to the number of tickets which he had bought of the defendant. The defendant objected to the evidence. But it appearing that the meeting of said directors was a meeting of friendly inquiry called at the defendant's request for the purpose of explaining his alleged delinquencies, and at which he asked questions and made comments on the declarations of the persons appearing before the board, and took notes of their testimony, and that he asked questions and made comments upon the declarations proposed to be proved, at the time said declarations were made, the evidence was admitted.

" The defendant subsequently offered to prove by the testimony of one of his counsel, that the above named Ellis, who deceased previous to the trial, had, while living, afterwards made a statement differing from the one above referred to. The plaintiffs objected to the admission of this testimony, and it was rejected by the court.

" The defendant's counsel, near the close of their case, offered to prove an inaccuracy of the plaintiffs' cashier, in regard to a particular entry, nowise bearing upon the case further than as affecting the cashier's general carefulness and accuracy. This was after the defendant's counsel had at an earlier stage of the case expressly admitted said cashier's general qualifications in the particulars named, in the amplest terms, with the view of superseding the necessity of making inquiries of the witness upon the point. Under these circumstances the court refused to admit the evidence offered.

" If either of the foregoing rulings or instructions were erroneous, then the verdict, which was for the plaintiffs in the sum of $6,841, is to be set aside, or so much of it as would be affected by said rulings, if the same is capable of being severed."

The defendant moved for a new trial because of the rulings and instructions of the presiding judge, set forth in the report; and also " because of the misconduct of the jury in finding said verdict;" and in support of this last ground, produced an affidavit of one of the jurors, in which he stated that the jury, after they retired to the jury room, agreed that each should set down the sum which he thought the plaintiff ought to recover, and that the aggregate of the twelve sums, divided by twelve, should, without alteration, be returned as the amount of damages.

The arguments were had at November term 1852.

*S. Bartlett & A. B. Ely*, for the defendant. 1. The report finds that the plaintiffs' evidence tended to show that the drawers of the ticket clerks had been opened by false keys, and tickets and money taken therefrom. Such taking was clearly a felony; and it is well settled in England that the private cause of action for a felony is suspended until the institution of criminal proceedings against the felon. *Higgins* v. *Butcher*, Yelv. (Amer. ed.) 90 *a*, *& note* 2. This doctrine has been recognized in New Brunswick; *Pease* v. *M'Aloon*, 1 Kerr, 111; and in several of the United States. *Foster* v. *Tucker*, 3 Greenl. 458. *Boody* v. *Keating*, 4 Greenl. 164. *Crowell* v. *Merrick*, 19 Maine, 392. *Belknap* v. *Milliken*, 23 Maine, 381. *Grafton Bank* v. *Flanders*, 4 N. H. 239. *McGrew* v. *Cato*, Minor, 8. And see, in this commonwealth, *Boardman* v. *Gore*, 15 Mass. 336; *Talbot* v. *Frederickson*, Yelv. (Amer. ed.) 90 *a*, note 2.

2. The ruling, that a specification of claim for the proceeds of tickets sold was supported by evidence of money taken from the office and replaced by the substitution of tickets, was erroneous. 1 Greenl. Ev. §§ 51, 56, 58, 66. A judgment for the plaintiffs in this action on this specification will not protect the defendant from a new suit for money taken from the plaintiffs' office. *Prima facie* the judgment would have no connection with the subject matter of the new suit; and although in certain cases, where the declaration does not ascertain the cause of action, the law permits a plaintiff to show, in answer to a plea of a former judgment, what were the causes of action contested in the former suit; yet when the declaration is precise,

like a specification, the law allows no extraneous proof. To hold otherwise would defeat the whole purpose of specification and of pleading, and leave it to be ascertained by parol, irre-spective of the record, in all cases, what were the subjects of controversy, although clearly stated in the record. *Jones* v. *Fales*, 4 Mass. 254, 255. *Parker* v. *Thompson*, 3 Pick. 429. *Gay* v. *Welles*, 7 Pick. 219. *Legg* v. *Legg*, 8 Mass. 99. *Smith* v. *Kirby*, 10 Met. 150. *Sayles* v. *Briggs*, 4 Met. 425. *Bridge* v. *Austin*, 4 Mass. 115. *Brintnall* v. *Foster*, 7 Wend. 103. Rev. Sts. *c.* 81, § 10. Rule 48 of this court, 24 Pick. 399. The plaintiffs should have been required to amend. See 1 Greenl. Ev. § 73.

3. The instruction, that if the jury were satisfied that the defendant sold the plaintiffs' tickets, and received the money therefor, he was bound to account for the same, &c., was errone-ous, because it proceeded on the ground that evidence of sale of tickets and receipt of money, under the circumstances, threw the burden of proof upon the defendant to account to the plaintiffs therefor. *Whitaker* v. *Salisbury*, 15 Pick. 543. *Park* v. *Harrison*, 8 Humph. 412. The burden was on the plaintiffs throughout, to show that the tickets sold and money taken by the defendant were the plaintiffs' property, as well as that the proceeds were not received by them in the usual course of busi-ness. *Tourtellot* v. *Rosebrook*, 11 Met. 460. *Powers* v. *Russell*, 13 Pick. 76. *Gilmore* v. *Wilbur*, 18 Pick. 517. *Wilmington* v. *Burlington*, 4 Pick. 174.

4. The admission of evidence of the defendant's possession of property, "subsequent to the time of the alleged peculations, within the period covered by the writ," and of his previous poverty, was erroneous. *Sorrelle* v. *Craig*, 9 Alab. 534. The period covered by the writ was two whole years; and this ruling obliged the defendant, at the risk of a judgment against him if he failed, to prove his transactions and negotiations during that time, from which the property in his possession resulted. In the case of a criminal prosecution for larceny, the law only admits proof of the possession of the specific articles stolen, not of property generally; and the possession must be within a

short ·time after the larceny.  *Rex* v. ——, 2 Car. & P. 459.
*Rex* v. *Adams*, 3 Car. & P. 600.   1 Cow. & Hill's notes (3d ed.)
to Phil. Ev. 477 – 482.   2 Hale P. C. 289.   The case of *Com-
monwealth* v. *Montgomery*, 11 Met. 534, even if well decided,
does not support the ruling in this case, for that case goes no
farther than to hold that, on a charge of larceny, evidence of a
single transaction in property like that stolen, within a few
weeks, with evidence that the defendant was entirely destitute
of money before the larceny, may be submitted to the jury, with
strong accompanying circumstances of guilt.   The criminal law
requires plenary proof of larceny, before the burden of proof is
thrown upon the defendant to account for property stolen, and
found in his possession ; but in the case at bar, the question
whether the plaintiffs had actually lost any thing was in contro-
versy.   And although, so far as the instruction of the court
could exclude the effect of the evidence upon this point, it must
be deemed to be excluded ; yet the practical impossibility of
doing this furnishes a strong ground, if the point be doubtful,
for excluding the testimony.   *Somes* v. *Skinner*, 16 Mass. 360.
*Ellis* v. *Short*, 21 Pick. 144.   *Watson* v. *Osborne*, 8 Conn. 363.

5. But if this evidence was admissible, then the contempo-
raneous conversations and declarations of the defendant as to
his pecuniary transactions and style of living at that time, prior
to the alleged appropriation of the property of the plaintiffs,
should have been admitted, as acts which indicated the posses·
sion of property, and would rebut any presumption of poverty
which might arise from his former circumstances, or from the
small amount of his receipts from any known salary.   1 Greenl.
Ev. §§ 108, 110.   *Haynes* v. *Rutter*, 24 Pick. 245.   *Allen* v.
*Duncan*, 11 Pick. 308.   *Rice* v. *Bancroft*, 11 Pick. 469.   *Kilburn*
*Bennett*, 3 Met. 199.   *Boyden* v. *Moore*, 11 Pick. 362.   *Pool* v.
*Bridges*, 4 Pick. 378.   *Salisbury* v. *Gourgas*, 10 Met. ·442.
*Darby* v. *Rice*, 2 Nott & McCord, 596.

6. Moore's testimony should not have been admitted.   It
went to prove that money was taken from the ticket office, and
tickets substituted, while the defendant was connected with the
ticket office, two or three years before the occurrences on which

this action is founded.   This charge was one of which the de-
claration gave the defendant no notice, and was therefore a sur-
prise upon him; and yet he was compelled to meet it as he
could, unless he would consent to relinquish one of his grounds
of defence, namely, that Fowle, the principal witness against
him, was in fact the guilty party, if guilt there was.   This evi-
dence was not competent, even for the purpose for which it was
admitted ; for proof that money had been taken from the plain-
tiffs two_or three years before, when Fowle was not in their
employ, had no legal tendency to show that the larceny in ques-
tion in this case was not committed by Fowle.   The addition
to the ruling, that this evidence " would be incompetent to show
the defendant's abstractions of money at the period laid in the
writ," does not cure the difficulty; for it does not even exclude
the inference that the plaintiff had in former years committed a
similar larceny.   And if it did, yet, if it was incompetent for any
purpose, it should have been rejected; as no instruction, as to
the legal uses to which the evidence could be applied, could pre-
vent the jury from being biassed by such evidence, if believed.
1 Greenl. Ev. § 52.   *Whiting* v. *Withington*, 3 Cush. 415.   *Mather*
v.  *Goddard*,  7  Conn.  304.   16  Mass.  360,  21  Pick.  144,  and
8 Conn. 363, above cited.

7.  The schedules of discrepancies in the sales and returns of
tickets, made up by the witness Fowle from original documents
previously proved in the case, should not have been admitted.
The primary evidence being already in the case, the effect of
the admission of such schedules, which are but secondary evi-
dence, was to withdraw the primary evidence from the scrutiny of
the jury, and induce a reliance on statements by witnesses
of the contents of the documents.   1 Greenl. Ev. §§ 88, 93, 94
*Vincent* v. *Cole*, Mood. & Malk. 258.   *The Queen's case*, 2 Brod
& Bing. 287.   *Rice* v. *Bixler*, 1 W. & S. 454.   *Mather* v. *Goddard*,
7 Conn. 304.   These schedules do not fall within the rule as to
results of inspection of many books and papers, which cannot
conveniently take place in court; for that rule is confined to
statements of results, without producing the books, and excludes
any statement or schedule of the contents or part of the contents

of the books. *Roberts* v. *Doxon,* Peake, 83. *Meyer* v. *Sefton,* 2 Stark. R. 276. *Dupuy* v. *Truman,* 2 Y. & Coll. Ch. 341. *Doe* v. *Perkins,* 3 T. R. 749. *Dennis* v. *Barber,* 6 S. & R. 420. Schedules of results of losses sustained by the plaintiffs prior and subsequent to the time included in the specification of claim cannot affect the defendant's liability in this action. A loss in 1845 or 1850 does not tend to prove a promise to pay for an alleged loss in 1847 or 1848; much less to prove a larceny in 1847 or 1848. 1 Greenl. Ev. § 53. *Somes* v. *Skinner,* 16 Mass. 360. *Ellis* v. *Short,* 21 Pick. 142.

8. The declarations of Ellis before the plaintiffs' directors are not competent evidence to prove admissions on the part of the defendant. The fact, that questions were asked and comments made by the defendant, would not make these declarations competent, except as parts of a full and exact account of all that was said and done at the time by all concerned, and especially by the defendant, which does not appear from the report. *Mattocks* v. *Lyman,* 16 Verm. 120. *Vail* v. *Strong,* 10 Verm. 463, 464. *Barnum* v. *Barnum,* 9 Conn. 242. *Fenner* v. *Lewis,* 10 Johns. 38. *Kelsey* v. *Bush,* 2 Hill's (N. Y.) Rep. 440. *Brown* v. *Munger,* 16 Verm. 18. *Clark* v. *Smith,* 10 Conn. 5.

9. If the declarations of Ellis were admissible against the defendant, contrary statements subsequently made by Ellis should be admitted to counteract their effect. If the defendant had admitted what was not true, he might prove it; and one mode of proof would be to show Ellis's statements false by his own admissions. *Knight* v. *New England Worsted Co.* 2 Cush. 282, 294. *Patrick* v. *Hazen,* 10 Verm. 183. *Pearson* v. *Sabin.* 10 N. H. 205. *Kimball* v. *Davis,* 19 Wend. 437. *Roberts* v. *Collins,* 6 Ired. 223.

10. The fact, that the defendant, at one stage of the trial, had fully admitted the general qualifications as to carefulness and accuracy of the plaintiffs' cashier, could not estop him, upon the discovery of a material inaccuracy at a later stage, to put it in evidence.

11. The agreement of the jury, before estimating the damages, to return as their verdict, without alteration, the average of the

individual estimates of the jurors, is ground for setting aside the verdict. *Dorr* v. *Fenno*, 12 Pick. 527, 528. *Mitchell* v. *Ehle*, 10 Wend. 595. And of this fact the statements and affidavits of the jurors themselves are proper and sufficient proof. *Smith* v. *Cheetham*, 3 Caines, 58, 59. *Crawford* v. *The State*, 2 Yerg. 60. *Elledge* v. *Todd*, 1 Humph. 43. *Cochran* v. *The State*, 7 Humph. 544. *State* v. *Hascall*, 6 N. H. 361. *Grinnell* v. *Phillips*, 1 Mass. 541.

*C. G. Loring & G. Bemis*, for the plaintiffs.

BIGELOW, J. The main objection, raised by the defendant in the present case, which, if well maintained, is fatal to the plaintiffs' action, presents an interesting and important question, hitherto undetermined by any authoritative judgment in the courts of this commonwealth.

The plaintiffs seek to recover in an action of assumpsit a large sum of money alleged by them to have been fraudulently abstracted from their ticket office by the defendant, while he was in their employment as depot-master, having charge of their principal railway station in Boston. In regard to this item of the plaintiffs' claim, the defendant contended at the trial, and requested the judge who presided to instruct the jury, that the plaintiffs were not entitled to recover in this action the money thus taken by the defendant, because their cause of action, if any they had, was suspended, until an indictment had been found or complaint made against the defendant for larceny. This request was refused, and the jury were instructed, that if the defendant had fraudulently taken and appropriated the plaintiffs' money in the manner alleged, and was thereby guilty of larceny, he would be liable in the present action, although no criminal prosecution had first been instituted therefor. It is upon the correctness of this instruction that the first and main question in the case arises.

The doctrine, that all civil remedies in favor of a party injured by a felony are, as it is said in the earlier authorities, merged in the higher offence against society and public justice, or, according to more recent cases, suspended until after the termination of a criminal prosecution against the offender, is the well

settled rule of law in England at this day, and seems to have had its origin there at a period long anterior to the settlement of this country by our English ancestors. *Markham* v. *Cob*, Latch, 144, and Noy, 82. *Dawkes* v. *Coveneigh*, Style, 346. *Cooper* v. *Witham*, 1 Sid. 375, and 1 Lev. 247. *Crosby* v. *Leng*, 12 East, 413. *White* v. *Spettigue*, 13 M. & W. 603. 1 Chit. Crim. Law, 5.

But although thus recognized and established as a rule of law in the parent country, it does not appear to have been, in the language of our constitution, "adopted, used and approved in the province, colony or state of Massachusetts Bay, and usually practised on in the courts of law." The only recorded trace of its recognition in this commonwealth is found in a note to the case of *Higgins* v. *Butcher*, Yelv. (Amer. ed.) 90 *a*, *note* 2, by which it appears to have been adopted in a case at *nisi prius* by the late Chief Justice Sewall. The opinion of that learned judge, thus expressed, would certainly be entitled to very great weight, if it were not for the opinion of this court in *Boardman* v. *Gore*, 15 Mass. 338, in which it is strongly intimated, though not distinctly decided, that the rule had never been recognized in this state, and had no solid foundation, under our laws, in wisdom or sound policy. Under these circumstances, we feel at liberty to regard its adoption or rejection as an open question, to be determined, not so much by authority, as by a consideration of the origin of the rule, the reasons on which it is founded, and its adaptation to our system of jurisprudence.

The source, whence the doctrine took its rise in England, is well known. By the ancient common law, felony was punished by the death of the criminal, and the forfeiture of all his lands and goods to the crown. Inasmuch as an action at law against a person, whose body could not be taken in execution and whose property and effects belonged to the king, would be a useless and fruitless remedy, it was held to be merged in the public offence. Besides; no such remedy in favor of the citizen could be allowed without a direct interference with the royal prerogative. Therefore a party injured by a felony could originally obtain no recompense out of the estate of a felon, nor even the

restitution of his own property, except after a conviction of the offender, by a proceeding called an appeal of felony, which was long disused, and wholly abolished by *St.* 59 Geo. 3, *c.* 46; or under *St.* 21 H. 8, *c.* 11, by which the judges were empowered to grant writs of restitution, if the felon was convicted on the evidence of the party injured or of others by his procurement. 2 Car. & P. 43, *note.* But these incidents of felony, if they ever existed in this state, were discontinued at a very early period in our colonial history. Forfeiture of lands or goods, on conviction of crime, was rarely, if ever, exacted here; and in many cases, deemed in England to be felonies and punishable with death, a much milder penalty was inflicted by our laws. Consequently the remedies, to which a party injured was entitled in cases of felony, were never introduced into our jurisprudence. No one has ever heard of an appeal of felony, or a writ of restitution under *St.* 21 H. 8, *c.* 11, in our courts. So far therefore as we know the origin of the rule and the reasons on which it was founded, it would seem very clear that it was never adopted here as part of our common law.

Without regard however to the causes which originated the doctrine, it has been urged with great force and by high authority, that the rule now rests on public policy; 12 East, 413, 414; that the interests of society require, in order to secure the effectual prosecutions of offenders by persons injured, that they should not be permitted to redress their private wrongs, until public justice has been first satisfied by the conviction of felons; that in this way a strong incentive is furnished to the individual to discharge a public duty, by bringing his private interest in aid of its performance, which would be wholly lost, if he were allowed to pursue his remedy before the prosecution and termination of a criminal proceeding. This argument is doubtless entitled to great weight in England, where the mode of prosecuting criminal offences is very different from that adopted with us. It is there the especial duty of every one, against whose person or property a crime has been committed, to trace out the offender, and prosecute him to conviction. In the discharge of this duty, he is often compelled to employ counsel; procure an

indictment to be drawn and laid before the grand jury, with the evidence in its support; and if a bill is found, to see that the case on the part of the prosecution is properly conducted before the jury of trials. All this is to be done by the prosecutor at his own cost, unless the court, after the trial, shall deem reimbursement reasonable. 1 Chit. Crim. Law, 9, 825. The whole system of the administration of criminal justice in England is thus made to depend very much upon the vigilance and efforts of private individuals. There is no public officer, appointed by law in each county, as in this commonwealth, to act in behalf of the government in such cases, and take charge of the prosecution, trial and conviction of offenders against the laws. It is quite obvious that, to render such a system efficacious, it is essential to use means to secure the aid and coöperation of those injured by the commission of crimes, which are not requisite with us. It is to this cause, that the rule in question, as well as many other legal enactments, designed to enforce upon individuals the duty of prosecuting offences, owes its existence in England. But it is hardly possible, under our laws, that any grave offence of the class designated as felonies can escape detection and punishment. The officers of the law, whose province it is to prosecute criminals, require no assistance from persons injured, other than that which a sense of duty, unaided by private interest, would naturally prompt.

On the other hand, in the absence of any reasons, founded on public policy, requiring the recognition of the rule, the expediency of its adoption may well be doubted. If a party is compelled to await the determination of a criminal prosecution before he is permitted to seek his private redress, he certainly has a strong motive to stifle the prosecution and compound with the felon. Nor can it contribute to the purity of the administration of justice, or tend to promote private morality, to suffer a party to set up and maintain in a court of law a defence founded solely upon his own criminal act. The right of every citizen, under our constitution, to obtain justice promptly and without delay, requires that no one should be delayed in obtaining a remedy for a private injury, except in a case of the

plainest public necessity. There being no such necessity calling for the adoption of the rule under consideration, we are of opinion that it ought not to be engrafted into our jurisprudence.

We are strengthened in this conclusion by the weight of American authority, and by the fact that in some of the states, where the rule had been established by decisions of the courts, it has been abrogated by legislative enactments. *Pettingill* v. *Rideout*, 6 N. H. 454. *Cross* v. *Guthery*, 2 Root, 90. *Piscataqua Bank* v. *Turnley*, 1 Miles, 312. *Foster* v. *Commonwealth*, 8 W. & S. 77. *Patton* v. *Freeman*, Coxe, 113. *Hepburn's case*, 3 Bland, 114. *Allison* v. *Farmers' Bank of Virginia*, 6 Rand. 223. *White* v. *Fort*, 3 Hawks, 251. *Robinson* v. *Culp*, 1 Const. Rep. 231. *Story* v. *Hammond*, 4 Ohio, 376. *Ballew* v. *Alexander*, 6 Humph. 433. *Blassingame* v. *Glaves*, 6 B. Monr. 38. Rev. Sts. of N. Y. Part. 3, *c.* 4, § 2. St. of Maine of 1844, *c.* 102.

2. The remaining objections raised at the trial may be briefly disposed of. First in order is the objection, that the plaintiffs, having in their specification of claim set out only a demand for proceeds of tickets sold, cannot recover under it for money taken and abstracted by the defendant from their ticket office. This objection might have been entitled to great weight, if it had been seasonably raised. But after the defendant had introduced evidence to rebut the claim of the plaintiffs in this particular, and the whole testimony in the case had been closed, it was quite too late to object on such grounds. The defendant was not taken by surprise by the nature of the claim, or the evidence offered in its support, but had endeavored to meet it fully by proof. Nor is it true, as was urged by the defendant, that the judgment in the present case would not be a bar to another suit in favor of the plaintiffs to recover on a similar claim for money abstracted by the defendant. The rule is familiar and well settled, that in such a case parol proof is admissible to show the precise nature of the claim adjudicated in a former suit. *Eastman* v. *Cooper*, 15 Pick. 285, 286. But if it were not so, the defect in the specification would constitute no valid objection to a recovery by the plaintiffs for the money abstracted by the defendant. The count for money had and received was a

declaration under which such recovery might be had; and there having been no surprise on the defendant, the defect in the specification was only a matter of form, not affecting the merits of the case, and so within the statutes requiring the allowance of amendments of formal defects, even after verdict. Rev. Sts. *c*. 100, §§ 21, 22. *St*. 1839, *c*. 151, § 1.

3. The next objection proceeds on a misconception of the instruction given by the court. The claim made by the plaintiffs in the sixth and seventh items of their specification was for tickets, belonging to them, sold by the defendant, and for which he received the proceeds. The instruction was not that the mere fact of sales of tickets by the defendant, without proof as to their ownership, threw on him the burden of accounting to the plaintiffs therefor. The question whether the tickets thus sold had first been purchased by the defendant and paid for by him to the plaintiffs, or whether they had been furtively taken by him and sold without the knowledge of the plaintiffs, and were therefore the property of the plaintiffs, when sold, was submitted to the jury; and the instruction given was, that if they found them to have been the plaintiffs' tickets, the defendant was bound to account to them for the proceeds when sold by him. In this view, the direction to the jury was clearly right.

4. The next objection presents a more important question, and, if it were now for the first time brought before us for adjudication, would require deliberate and careful examination. But it appears to us, that the question has been determined in a recent decision of this court. *Commonwealth* v. *Montgomery*, 11 Met. 534. The plaintiffs offered evidence tending to show that the defendant, at the time of entering the plaintiffs' service, was insolvent, and that he had since received only a limited salary and some small extra compensation; and that subsequent to the time of his alleged misdoings, and during the period specified in the writ, he was the owner of large property, far exceeding the aggregate of all his salary and receipts, while in the service of the plaintiffs. This evidence was objected to by the defendant, but was admitted for a single and limited purpose as

having some tendency to prove, if the jury were satisfied from other and independent sources of proof, that money had been fraudulently abstracted from the plaintiffs by some one in their employment, that the defendant was the guilty party. The instruction to the jury on this point was carefully guarded, and their attention was particularly drawn to the precise bearing of the evidence. It appears to us, that this evidence was competent, not on the ground, as the defendant supposes, of its being proof of possession of stolen property, but upon the broader and more general principle of being a material and relevant fact to the point in issue before the jury. The defendant had held an office of trust under the plaintiffs for a series of years. During this time he possessed their entire confidence, and had means of access to the places where their tickets were deposited and their money kept. The allegation on the part of the plaintiffs was that during this entire period he violated their confidence by clandestine sales of tickets, for which he never accounted, and by abstractions of money from their ticket offices. To establish these facts, we think it was competent for them to prove the conduct of the defendant during the time he was in their employment, his habits of life and his pecuniary condition and resources, as having a direct bearing on the inquiry before the jury. They were in the nature of *res gestæ*, accompanying the very acts and transactions of the defendant under investigation, and tending to give them character and significance. In this view, the case at bar presents much stronger reasons for the admission of the evidence than the case, before cited, of *Commonwealth* v. *Montgomery*. In that case, the possession of a large amount of money, several weeks after the alleged criminal act, not identified as the stolen property, in connection with the previous poverty of the defendant, was admitted as tending to prove a single act of larceny. The present case is widely different in its circumstances, and the testimony had a more direct bearing on the issue. The charge against the defendant was in the nature of a charge of embezzlement, extending over a period of more than two years, not susceptible in its nature of direct proof, but to be established mainly by circumstantial evidence. The testimony

was therefore directly connected with the alleged fraudulent acts, and tended to prove the possession of money and other property by the defendant at the very time of their supposed commission. This evidence, unexplained, had a direct tendency to implicate the defendant. The argument so strenuously urged by the defendant, that the admission of such evidence imposed a burden on the defendant of proving negotiations and transactions during a long period of time, which it was difficult, if not impossible, to discharge, bears very strongly on the weight of the evidence, and might well have been urged upon the consideration of the jury; but it does not in our judgment at all affect its competency.

5. The declarations of the defendant, made in the absence of the plaintiffs' agents, to third persons, concerning his property and business transactions, were rightly rejected on the familiar principle, that the declarations of a party in his own favor, in the absence of the adverse party, are incompetent. It was open to the defendant to prove any facts bearing on his property and the mode of its acquisition, but not to introduce his own naked, unsupported declarations on the subject.

6. The objection founded on the admission of the evidence of Moore is also untenable. It was not offered nor admitted for the purpose of affecting the defendant in any way; but simply to repel an imputation on the character of one of the plaintiffs' witnesses, by which the defendant sought to impeach him, and after a refusal to disclaim such impeachment. In the peculiar posture of the case on this point, and under the limitations and guards with which it was admitted, and submitted to the jury, we think the evidence was rightly received. The abstractions of money from the plaintiffs' ticket office, having been, during the entire time, effected by a peculiar mode of operation and by the use of devices of a similar character, and this having been done before Fowle, the witness, was in the employment of the plaintiffs, or had any means or opportunities of access to the office of the plaintiffs, tended to show that he was not the guilty party, and was not liable to the imputation which the defendant sought to fasten on him, although they had no tendency to prove that the defendant was liable in this action.

7. The defendant further objects, that schedules, made from the original papers and documents previously proved in the case, showing certain data and results obtained therefrom, and verified by the witness by whom they were prepared, were improperly admitted. But it appears to us, that questions of this sort must necessarily be left very much to the discretion of the judge who presides at the trial. It would doubtless be inexpedient in most cases to permit *ex parte* statements of facts or figures to be prepared and submitted to the jury. It should only.be done where books and documents are multifarious and voluminous, and of a character to render it difficult for the jury to comprehend material facts without the aid of such statements, and even in such cases they should not be admitted, unless verified by persons who have prepared them from the originals in proof, and who testify to their accuracy, and after ample time has been given to the adverse party to examine them and test their correctness. Such was the course pursued in the present case, and there can be no doubt that, in a trial embracing so many details and occupying so great a length of time as the case at bar, during which a great mass of books and documents were put in evidence, it was the only mode of attaining to an intelligible view of the cause before the jury.

8, 9. The next objection urged by the defendant is, that the statements of Ellis, made in the presence of the defendant, were admitted in evidence. But it appears to us that, on the facts stated in the report, they were competent, as tending to prove admissions by the defendant. They stand on the familiar principle, that what was said to a party, together with his replies thereto, or his silent acquiescence in statements, affecting his own interest, to which he has opportunity of replying, are admissible in evidence against him. In this view, the declarations of Ellis, subsequently made, when the defendant was not present, were clearly incompetent. The veracity of Ellis was not drawn in question. The point to be proved was the admissions of the defendant. These could not be controlled or contradicted by the statements of Ellis subsequently made to third parties.

10. The rejection of evidence, tending to impeach the accu

racy of the plaintiffs' cashier, was, under the circumstances, a matter of discretion with the judge who presided at the trial, and forms no sufficient ground for setting aside the verdict. It presents only a question affecting the order of the trial and good faith on the part of counsel in the conduct of a case, and not a question of right which a party can ask to have revised on a motion for a new trial.

11. The only remaining question arises on the motion for a new trial founded on the alleged misconduct of the jury in making up their verdict. Without considering the question, whether the matter stated in the affidavit of one of the jurors, if properly proved, would be deemed sufficient cause for invalidating a verdict and granting a new trial, it is only necessary to say, that there is no competent evidence offered to sustain the motion in the present case. It has been often determined in this court, that the affidavits of jurors cannot be received for the purpose of proving misconduct in the jury room. *Dorr* v. *Fenno*, 12 Pick. 525. *Murdock* v. *Sumner*, 22 Pick. 156. *Folsom* v. *Manchester*, Middlesex, October term 1853.

*Judgment on the verdict.*