## AN INDIVIDUAL PARTNER MAY BE GUILTY OF EMBEZZLEMENT OF MONEY RECEIVED BY THE PARTNERSHIP.

Circuit Court of Geauga County.

### FORD v. STATE.

Decided, February Term, 1908.

*Criminal Law—Embezzlement—Individual Partner Guilty of—When Money Received by, as Agent, is Converted to Use of the Partnership—Evidence—Abstracts of Books and Documents, Prepared by Expert Accountant, Admissible When—"Thing of Value"—Section 6842, as Amended.*

1. An individual member of a partnership who receives money as an agent and secrets it with intent to embezzle and convert it to the use of the partnership may be convicted under Section 6842, Revised Statutes. The fact that the money is received by him as a member of a partnership makes no difference.

2. Where books and documents are multifarious and voluminous, abstracts and schedules which have been prepared therefrom by an expert accountant may be admitted in evidence, but in such case the books and documents must either be first offered in evidence or be in the custody of the court so that the party against whom such abstracts and schedules are offered may have an opportunity from their examination to verify their correctness.

3. Under Section 6842, Revised Statutes, as amended April 29, 1902 (95 O. L., 303), in order to convict the accused "the thing of value" must come into his possession after the passage and taking effect of the act as amended.

*N. H. Bostwick* and *W. H. Boyd,* for plaintiff in error.

*W. G. King,* Prosecuting Attorney, and *G. W. Alvord,* contra.

COOK, J.; LAUBIE, J., concurs; BURROWS, J., concurs in the conclusion.

George H. Ford and Robert N. Ford were jointly indicted by the grand jury of this county for the crime of embezzlement and for secreting with intent to embezzle and convert to their own use $108, the money of Annie Marsh, the same being intrusted to them as her agents.

The accused demanded separate trials and Robert N. was placed on trial upon two counts of the indictment, one of which charged him with embezzling the $108 and the other with sercet- ing with intent to embezzle and convert to his own use the same money. He was convicted of the crime of secreting and found not guilty of embezzlement.

The facts show that the two Fords, who are brothers, were engaged in the banking business as partners in this county for many years, the name of the partnership being Boughton, Ford & Co.—Robert N. Ford managing the business. They did a large business; had a large number of depositors, and the general con- fidence of the community. The partnership failed in 1903, mak- ing a general assignment for the benefit of creditors, both as a partnership and individually, and afterwards they were forced into bankruptcy.

For many years previous to the assignment, the Fords, both as partners and individuals, were hopelessly insolvent—their deposits being over a million dollars with not one-fifth of actual assets to pay or indemnify the depositors. During all these years they resorted to all kinds of schemes and devices to keep the bank afloat; and during all this time they received deposits, even up to the day of the assignment. Kiting of checks, issuing of fictitious notes in the names of clerks and even of persons deceased for the purpose of securing money to carry the bank along, was of daily occurrence.

The $108 which the Fords were charged in the indictment with secreting was left at the banking house in the early part of August, 1900, by one O. P. Williams to be paid upon a note of Annie Marsh which had been left at the bank by her for collec- tion and which money the bank had full authority to receive as the agent of Annie Marsh. The money was paid by Williams to Robert N. Ford, and he immediately placed it in the general funds of the bank. Upon inquiry being made of him afterwards, at different times, he gave false accounts respecting the matter, saying to Mr. Williams when asking for the note that it had not been left with him as yet, when in fact he had the note long be- fore the payment of the money. These false statements were

made at many different times and on or about September 1, 1902, he said to Mr. Marsh, the husband of Mrs. Marsh, upon direct inquiry that no money had been paid by Williams upon the note, showing at least at that time he did not propose to pay the money over and had appropriated the same or designed appropriating it.

Three distinct grounds of error are relied upon for reversing the judgment.

First.    The money having been paid to Ford as a partner of the partnership of Boughton, Ford & Co., he and his brother being then the sole members of the firm, and he having placed it among the other moneys of the partnership, that the partnership was the agent and not Robert N. Ford; and that there is no provision in the statute making a partnership liable.

Second.    The court erred in receiving the testimony of the expert, Carl Nau.

Third. ' That the verdict is against the evidence; that in fact the evidence shows no crime was committed under the indictment.

As to the first ground of error:    The partnership had no distinct entity from the individuals composing it; each partner acts for himself as well as the partnership; each member is individually liable even in a civil action.    Robert N. Ford received the note of Mrs. Marsh for the purpose of receiving payment from O. P. Williams.    He received the money from O. P. Williams to pay on the note, and instead of paying it over to Mrs. Marsh he commingled it with the money of the partnership and afterwards secreted it there for the purpose of converting it to the benefit of the partnership.    Robert N. Ford had control of the whole transaction, all the false statements showing criminal intent were made by him.

As to the second ground:    That the court erred in receiving the testimony of the expert, Carl Nau.

In order to prove that there was a motive for Ford to embezzle or secrete with intent to embezzle this money, the State properly sought to show that both the banking firm of the Fords and also Robert N. Ford were insolvent.    For this purpose the

books of the firm were important. These books were voluminous and were in possession of the trustee under the bankruptcy proceeding. Carl Nau, who was admitted to be a competent accountant, was employed by the State to go through these books and make a tabulated statement from the same showing his conclusions from the books as to the solvency or insolvency of the firm, and of the Fords individually. He did so and testified as to what the books showed. His conclusions from the books and the tabulated statement were also introduced in evidence. But a small number of the books which Nau examined and from which he made up his statement and derived his conclusions were introduced in evidence or were within the control of the court or in the court room. Nau also testified as to the insolvency of a number of persons that were indebted to the bank. The evidence of Nau was objected to in whole and also as to each item. The court admitted the evidence and proper exceptions were noted. We think the court committed error in admitting this evidence. There is no doubt but what in cases of this character a competent expert accountant may testify as to the result of his examination of the books; but the books must be first introduced in evidence or at least be under the control of the court so that the accused may have the use of them. It was the right of the accused to test the correctness of the tabulated statements of the expert, and also the correctness of his deductions from the books as testified to by him. How could that be done when the books were not there? Counsel for accused demanded that the State bring the books that its expert, Nau, had examined into court: and insisted that he should not testify until that was done, but the court made no order and the books were not produced. We think this was error.

In the case of *Boston & Worcester Ry.* v. *Dana*, 67 Mass. (1 Gray), 83, it was held:

"When books and documents introduced in evidence at a trial are multifarious and voluminous, and of such a character as to render it difficult for the jury to comprehend material facts, without schedules containing abstracts thereof, it is within the discretion of the presiding judge to admit such schedules, verified by the testimony of the person by whom they were pre-

pared, allowing the adverse party an opportunity to examine them before the case is submitted to the jury.''

On page 104 in the opinion by Justice Bigelow, it is said:

''The defendant further objects, that schedules, made from the original papers and documents previously proved in the case, showing certain data and results obtained therefrom, and verified by the witness by whom they were prepared, were improperly admitted. But it appears to us, that questions of this sort must necessarily be left very much to the discretion of the judge who presides at the trial. It would doubtless be inexpedient in the most cases to permit *ex parte* statements of facts or figures to be prepared and submitted to the jury. It should only be done where books and documents are multifarious and voluminous, and of a character to render it difficult for the jury to comprehend material facts without the aid of such statements, and even in such cases they should not be admitted, unless verified by persons who have prepared them from the originals in proof, and who testify to their accuracy, and after ample time has been given to the adverse party to examine them and test their correctness. Such was the course pursued in the present case, and there can be no doubt that, in a trial embracing so many details and occupying so great a length of time as the case at bar, during which a great mass of books and documents were put in evidence, it was the only mode of attaining an intelligible view of the cause before the jury.''

Furthermore, Nau, the expert, was permitted to testify over objection, as to the insolvency of many persons that had obligations in the bank. It was not shown that he had any special knowledge of the financial standing of these parties, but without any qualification in that regard whatever, he was permitted to state over objection that numerous persons indebted to the bank were wholly insolvent and their obligations worthless. We think this was also error. But was the error prejudicial. As we have said the only object of this evidence was to show that the firm was solvent as was also Robert N. Ford, and counsel for the accused both before and after the introduction of the evidence of this expert admitted in open court that both the firm and Robert N. Ford were insolvent at the time of the claimed criminal act and had been for several years previously.

So that while the evidence was wholly incompetent, and it was error to admit it, the error was not prejudicial.

The next ground of error insisted upon is that the verdict is not sustained by the evidence. The indictment charged that Robert N. Ford on September 1, 1902, secreted and hid away the money for the purpose of embezzling it and converting it to his own use.

Section 6842, Revised Statutes, respecting embezzlement and the secreting with intent to embezzle or convert to his own use anything of value, was amended April 29, 1902 (95 O. L., 303), and the original section repealed. It is true that the amendment was very slight, only adding other parties that might be guilty of the crime, such as officers of lodges, etc., and in no manner changed the law as to the crime of which Ford was charged, yet as to this case it was very important.

In *Campbell* v. *State*, 35 Ohio St., 70, it was held:

"Under an indictment for embezzlement, which charges the offense to have been committed after the act of May 5, 1877 (74 O. L., 249, Section 11), took effect, the defendant can not be convicted of an offense committed before the taking effect of said act, notwithstanding the right of the state to prosecute for the violation of a former statute (66 O. L., 29, which was repealed by the act of May 5, 1877), was saved by the act of February 19, 1866 (S. & S., 1)."

In the opinion by Judge McIlvaine on page 77 it is said:

"The indictment charged that the offense was committed on the twenty-eighth day of January, 1878. The statute against embezzlement then in force took effect from and after the first day of July, 1877. Testimony had been offered, tending to prove that the offense was committed previous to the taking effect of that act, and other testimony tending to show that the offense was committed subsequent to the taking effect of the act. The court refused to charge the jury, though requested to do so, that the defendant could not be convicted upon the indictment under which he was on trial, unless the jury should find that the offense was committed after the act of May 5, 1877, took effect, to-wit, at least as late as July 1, 1877. In this refusal, we think, the court erred.

"The theory upon which the State seeks to maintain the conviction, notwithstanding the refusal to charge as above stated,

is this: The act of March 15, 1869 (66 O. L., 29), which was repealed by the act of May 5, 1877, defined the crime of embezzlement, and provided for its punishment. It is true the offense, as defined in the act of 1869, differs in some respects from that of 1877, but the difference is not material to the disposition of the question here decided. Although the act of 1869 was repealed by the act of 1877, the right of the State to prosecute offenses committed in violation of the former was saved by the act of February 19, 1866 (S. & S., 1), and hence the State claims that the defendant might have been properly convicted, upon the trial below, of embezzlement committed in violation of the repealed statute. This claim on the part of the State can not be supported. If the indictment had charged the offense to have been committed in violation of the repealed statute at a time when it was in force, the act of 1869 would have supported the prosecution. But this was not done. The offense was charged to have been committed after the act of 1869 had been repealed, and therefore the act of 1869 does not apply. Whether or not an offense punishable by law is charged in an indictment, must be determined by the state of the law at the time the offense is alleged to have been committed. For the purpose of determining this, the question of time as laid in the indictment is material, otherwise an indictment would be good although the facts averred did not constitute an offense under any law, at the time when they are alleged to have been committed, provided a law was in force at the time laid in the indictment, which made them an offense.''

It therefore follows that the criminal act being alleged to have been committed September 1, 1902, it devolved upon the State to show that each and every essential element constituting the crime must have been committed after the passage of the amendatory act of April 29, 1902.

What are the essential elements of the crime of which Ford was charged? First, he must receive the money as the agent of Annie Marsh; second, he must secret and hide it away; and, third, he must secret and hide it away with the intent to embezzle or convert it to his own use.

The contention of the plaintiff in error is that the whole evidence shows that if any embezzlement or secreting with intent to embezzle took place that it was done by the accused long before April 29, 1902.

Two members of the court are of the opinion that this contention is not well founded. It is true that there is some evidence showing that the accused made false statements respecting the transaction previous to April 29, 1902, but the material false declaration and overt acts on his part showing an intention to secrete with intent to embezzle and appropriate to his own use the money, did not take place until about September 2, 1902, several months after the passage of the amendatory act.

While this is true, yet the whole evidence does show that the accused received the money from Williams as the agent of Mrs. Marsh some time in August, 1900, and the receipt of the money by him as agent is one of the essential elements of the crime and as one of the essential elements of the crime it must take place after the taking effect of the act. This is the plain reading of Section 6842, Revised Statutes:

"An agent * * * who embezzles or converts to his own use, or fraudulently takes or makes away with, or secretes with intent to embezzle or convert to his own use, anything of value which shall come into his possession by virtue of his employment or appointment * * * as such agent * * * is guilty of embezzlement and shall be punished as for the larceny of the thing embezzled."

This is also the identical language as used in the act amended and repealed. Mark the language "which shall come into his possession," not had come, or has come, nor shall have come; but "shall come." Come when; it seems to us—the entire court—that no other construction could be given upon the language than that the thing of value must come into the possession of the agent after the passage of the act making it a crime.

In so holding we are directly in line with the decision, *Young* v. *State*, 6 C. C.—N. S., 53, where it was held, that where the statute defining embezzlement is repealed during the period when the amounts were received, and a new statute is enacted, it is error to admit evidence of the alleged embezzlement of the sums received prior to the enactment of the new statute; and where confessions of the accused are so lacking as to time and

amóunt as to render it impossible to determine whether reference is made to sums received before or after the change in the statute, the confessions are incompetent.

We are therefore of the opinion that no crime was committed by the accused under the indictment.

We are not unmindful that this holding in some cases will permit the guilty to escape and possibly does so in this case; as for instance where an agent received the "thing of value" before the amendment and secretes it after the amendment, he can not be prosecuted under the statute repealed for the reason that one essential element of the crime, the secreting, took place after the repeal and he can not be prosecuted under the amended act, for the reason that one essential element took place before the amended act took effect.  This result should have great weight in determining the intent of the Legislature and were not the language of the amended act plain and unambiguous it might work a different result, but we can not construe the language in any other manner than that the receipt of "the thing of value" must be after the amended act went into effect.

All penal statutes must be construed strictly and the difficulty arising out of the wording of the act must be cured by the Legislature.

The language of the statutes respecting embezzlement is very different in the states respecting this matter.  Our statute is copied after the English statute.

The New York statute reads:

"A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person * * * or having in his possession, custody, or control, as a bailee, servant, attorney, agent, clerk, trustee, or officer of any person, association, or corporation, or as a public officer, or as a person authorized by agreement, or by competent authority, to hold or take such possession, custody, or control, any money, property, evidence of debt or contract, or article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof, steals such property and is deemed guilty of larcency."

The Illinois statute reads:

"Whoever embezzles or fraudulently converts to his own use, or secretes with intent to embezzle or fraudulently convert to his own use, money, goods, or property delivered to him, which may be the subject of larceny, or any part thereof, shall be deemed guilty of larceny."

The Massachusetts statute reads the same as the Illinois.
The California statute reads:

"Every clerk, agent, or servant of any person, who fraudulently appropriates to his own use,  *  *  *  any property of another which has come into his control or care by virtue of his employment,  *  *  *  is guilty of embezzlement."

The Alabama statute reads:

"Any officer, agent, or clerk of any incorporated company, or municipal corporation, or clerk, agent, servant, or apprentice, of any private person or persons, who embezzles or fraudulently converts to his own use,  *  *  *  any money or property which has come into his possession by virtue of his office of employment, shall be punished, on conviction, as if he had stolen it."

The judgment, for the reason that the money came into the custody of the accused before the amendment of April 29, 1902, must be reversed, and there being no controversy about the evidence in that respect the accused will be discharged at the costs of the State.

BURROWS, J.

I concur in the conclusion, and am of opinion that the alleged crime was committed in respect to every element of it, prior to the time that the amended statute went into effect.